*New-Haven,*
June,
1819.

BROOKS *against* HUBBARD.

June 21.

In an action on a note, wherein the defendant promised to pay the plaintiff, twelve months after date, two hundred and fifty dollars, in brown cotton shirting, at the price of thirty cents *per* yard, the defendant, on a hearing in damages, after a default, offered evidence to shew, that cloth of that description, at the time the note became payable, was of less value than thirty cents *per* yard ; held, that such evidence was inadmissible, the sum specified in the note furnishing the rule of damages.

THIS was an action on a promissory note in these words :
" *Berlin, March* 9, 1816.

Twelve months from date, I promise to pay *Hezekiah Brooks,* two hundred and fifty dollars, in brown cotton shirting, at the price of thirty cents *per* yard, for every yard in length, and to average three fourths of a yard in width.   *Lemuel Hubbard.*"

The defendant was defaulted, and moved to be heard in damages, which was allowed.   He then offered the testimony of sundry witnesses to prove, that on the day when the note became payable, the price of the shirting therein described, was, at the place of payment, twenty cents only *per* yard.   To the admission of this evidence the plaintiff objected ; and the court rejected it, and thereupon assessed the damages at two hundred and fifty dollars, and interest after the note became due.   The defendant moved for a new trial, on the ground that this decision was erroneous ; and the court reserved the question arising thereon for the advice of all the Judges.

*Daggett* and *E. Huntington,* in support of the motion.   It will be admitted to be a clear rule of law, that if this note was given for a particular quantity of cloth, the *value* of the cloth, when it should have been delivered, must be the amount of damages.   It will also be admitted, that the defendant might have discharged himself, by a tender of the cloth, though he might buy it at twenty cents *per* yard.   But as he has not tendered it, the court say, the damages are ascertained by agreement of the parties.   This is most manifestly an absurdity. The doctrine of liquidated damages is found in *Lowe* v. *Peers,* 4 *Burr* 2225. 2228, 9. and the cases there cited, and has no more relation to this case, than the rule in *Shelley's* case. If the two hundred and fifty dollars mentioned in the note be considered as a penalty to compel a performance of the con-

tract, the rule is the same as to the damages, *viz.* the value of the thing to be delivered.

The case may be thus illustrated. What could the promisee claim under this contract ? Answer : As much cloth as will come to two hundred and fifty dollars, at thirty cents *per* yard. But the cloth rises to sixty cents, at the time the contract is to be performed ; and it is not delivered. In this case, what shall the promisee recover ? Answer : As much money as will buy two hundred and fifty dollars worth of cloth at thirty cents *per* yard, *viz.* five hundred dollars worth ; for this the promiser contracted to deliver ; and this only will make the promisee good. Again, the cloth falls to fifteen cents *per* yard ; and it is not delivered. What damages has the promisee sustained ? Answer : As much money as will buy two hundred and fifty dollars worth of cloth, at thirty cents *per* yard.

*A.* contracts to deliver to *B.* 1000 shares of *United States* bank stock, on the first of *July*, 1819, and to receive therefor, ninety dollars *per* share. *B.* promises, by a contemporaneous contract, to receive 1000 shares of stock, and to pay therefor at the rate of ninety dollars *per* share. The stock is not delivered ; and stock falls to eighty dollars *per* share. What damages shall be recovered ? Answer : The *value* of the stock, on the 1st of *July*, 1819. But it rises to one hundred dollars *per* share ; and it is not delivered. What is the rule of damages ? Answer : The *value* of the stock, on the 1st of *July*, 1819.

This is clearly a contract to deliver and receive cotton shirting, amounting to two hundred and fifty dollars, reckoning such shirting at thirty cents *per* yard.

*Sherman,* contra, admitted, that if this were a contract to deliver a certain quantity of cloth, at a certain time, and nothing more, there must be an enquiry as to the value ; but he insisted, that the parties, by the terms of their contract, had fixed the *price* at which the cloth was to be delivered and received ; and on failure of delivery, that price must furnish the rule of damages. The construction claimed by the defendant's counsel, entirely rejects the stipulation of the parties as to price, and makes the writing in question a mere contract to deliver 883 1-3 yards of cotton shirting, in twelve months. Why is not the stipulation as to price binding ? It is opposed

to no principle of policy, or rule of law; nor is it inconsistent with the other terms of the contract. The parties must have intended, that it should have effect; otherwise, they would not have inserted it. If the cloth had been tendered, at the time of payment, it must have been received at the stipulated price, without regard to the actual value : As it was not delivered, the stipulated price must furnish the rule of damages.

Hosmer, Ch. J. This is an action on a promissory note, in which the defendant suffered a default, and, on a hearing in damages, claimed the admission of parol testimony, to prove the value of cotton shirting, when the note fell due. The testimony was rejected, on the ground that the *damages* were *liquidated*, and, by the agreement of the parties, appeared on the face of the contract. The note was payable in twelve months from date, and contained a promise to pay the plaintiff 250 dollars in brown cotton shirting, at the price of thirty cents *per* yard.

The contract in question is one of the most common forms of engagements between manufacturers and their workmen ; and from their frequency, the meaning is perfectly intelligible. The promise to pay 250 dollars, necessarily implies, a recognition of indebtedness to that amount. The residue of the note has no bearing on this point, and relates exclusively to the *mode of payment.* The manner in which the debt is to be paid, whether it be in cash, or in collateral articles, has no relevancy in ascertaining the sum due. It points to an object wholly separate, and distinct. If the defendant, when the note was given, did not owe the plaintiff 250 dollars, and this sum is to be considered as a penalty to enforce the contract, what is the value of the stipulation? It is a promise to pay *blank* yards of cotton shirting, and void for uncertainty. Expunge the 250 dollars, or what is virtually the same thing, decide that it is not the real amount of debt, or liquidated damages, and the note contains no criterion by which the number of yards of cotton shirting can be estimated. Now, as the quantity of shirting is not mentioned, it necessarily follows, that unless the 250 dollars is the sum due to the plaintiff, and therefore, a standard by which to estimate the value of the contract, there is no certain engagement in words, or by reference, from which the debt can be ascertained. It is admitted by the defendant, if the note had been for 250 dollars payable in cotton shirting,

*New-Haven,*
June,
1819.

Brooks
*v.*
Hubbard.

and there had ceased ; that the damages, in the event of non-payment, must be the sum expressed.    This surrenders the question in controversy.    Why should the above sum be payable in the event expressed ? For this convincing reason, because the damages are *liquidated.*    But if the damages had been liquidated, the subsequent agreement, that the shirting shall be received at 30 cents *per* yard, can have no possible effect on the prior liquidation.    It was not inserted for that purpose, but to obviate the necessity of recurring to parol proof, for the ascertainment of the value of the shirting, should it be delivered.    For this end, the parties agreed on a certain arbitrary valuation, which they anticipated would, probably, be the real value, but which, in all events, they, for their mutual convenience, agreed to consider as such.    This is the whole scope and effect of this latter clause in the note ; that the defendant might know how many yards of shirting to deliver, and the plaintiff, how much he was entitled to demand, if it should be tendered.

The case has been argued for the defendant, as if there had been a promise to deliver a certain number of yards of shirting, and an omission to deliver them.    That would present a question of unliquidated damages, in which resort must be had to parol testimony, to ascertain the value of the contract ; but it has no imaginable bearing on the case before the court, in which the debt is ascertained.

It has been contended, that in no case can the plaintiff recover a sum greater in amount than the value of the article, which, had it been tendered, would have satisfied the contract.    This principle is manifestly incorrect ; and is not always true, even when applied to a case where the damages have not been liquidated.    In a contract for the transfer of stock, on a certain day ; the party promising may be relieved, by a strict performance of his engagement ; but, if he omit to do it, the court will award in damages against him, the price of the stock, although it has risen, at the moment when judgment is rendered.

The construction, which I have given to the note in question, is according to the obvious intention of the parties, and perfectly equitable in its result.    The sum expressed is to ascertain the indebtedness, that is, 250 dollars ; and the residue, to give an option to the defendant to pay the debt in collateral articles, at a stipulated price.    If the payment were not

made, what must have been the expected consequence ? That this part of the agreement should be as if it never had existed ; and then, that the whole contract should be comprised in the expression, "I promise to pay 250 dollars." Nothing can be more conformable to natural justice. The plaintiff will receive the precise sum admitted to be his due, and no more. And if the defendant is in a condition less eligible than he might have been, if he had availed himself of the option allowed him, it was his voluntary choice. After he had renounced the privilege accorded to him, to limit the recovery of the plaintiff, by the value of the cotton shirting, would be to give the defendant the abnegated option, in another shape, in defiance of equity, and in opposition to the agreement of the parties.

The other Judges were of the same opinion.

New trial not to be granted.