## PERKINS *v.* EWAN.

### Opinion delivered February 4, 1899.

1. TRESPASS—DAMAGES.—The measure of damages for the seizure and sale under process of a stock of goods of a stranger is the sum for which the goods could be sold in bulk at the time of the seizure, with 6 per cent. interest, and such damages cannot be diminished by an allowance for the costs of such sale. (Page 177.)

2. SAME—SALE BY RECEIVER.—The fact that a receiver was appointed in an attachment suit, in which the goods of a stranger were seized and sold as belonging to the defendant therein, will not affect their owner's right to recover their value. (Page 178.)

3. EVIDENCE—VALUE.—In order to show the market value of goods illegally seized under process and sold, it is competent to prove what the goods sold for under such process. (Page 179.)

Appeal from Monroe Circuit Court.

JAMES S. THOMAS, Judge.

#### STATEMENT BY THE COURT.

This is an action upon an indemnifying bond. One Henry Goldman was the owner of a stock of goods worth from three to five thousand dollars. Goldman was indebted to the plain-tiffs, J. R. Perkins et al., in sums aggregating over seven thousand dollars. To secure this indebtedness, he gave them a mortgage upon his stock of goods, and put them in possession of the same. Goldman was also indebted to other parties in large amounts, and certain of these parties brought suits against him in the Monroe circuit court, and had attachments issued against his property, and directed the sheriff to levy the attachments upon the stock of goods above mentioned. The sheriff

demanded an indemnifying bond, and thereupon defendants, P. C. Ewan et al., executed the bond upon which this action is brought.

The sheriff levied upon the goods, and took them from the possession of the plaintiffs. Afterwards the judge of the Monroe circuit court, on motion of defendants, appointed a receiver to take charge of and sell the attached goods. The plaintiffs had notice of this application for a receiver, but did not appear. The receiver sold the attached property as ordered, and afterwards turned over the proceeds to the plaintiffs, less $342.90, costs of selling the goods, including clerk's hire, etc. Plaintiffs brought this action upon the indemnifying bond to recover damages for the unlawful seizure and conversion of their goods.

Upon the trial the circuit judge gave the following instructions to the jury: "(1) It is admitted in this case that the levy upon the goods of plaintiff was wrongful, and this entitled the plaintiff to recover in some amount, unless you find that the plaintiffs have already received of the defendants, on account of the unlawful levy and conversion, an amount equal to the value of the goods at the time of the levy, and six per cent. interest to the time of payment. The burden is upon the plaintiff to show the value of the goods taken and converted, and the burden is upon the defendants to show the amount paid by them on account of said unlawful levy. (2) If you find the plaintiff is entitled to recover, you will assess the damage at the value of the goods at the time of the levy, with six per cent. interest to this date, less such sums as have been paid, and six per cent. interest thereon to this date from the date of payment, after deducting the necessary expenses of the sale. (3) In fixing the value of the goods, you are instructed that what this stock may have sold for at forced sale, or similar stocks, is not the criterion of value. (4) The jury are instructed that if they find from the evidence that the goods were sold by T. H. Jackson, as receiver, upon the terms and in the manner designated by the mortgage given by Henry Goldman to the plaintiffs in this action, then the necessary expenses incurred in such sale, and the taxes thereon, should be deducted from the sum which the plaintiff should recover; and if you find from

the evidence that said goods were sold at their value in bulk, in the town of Brinkley, and that the plaintiffs or their attorneys have received the money, less the expenses of the sale, taxes, etc., they will find for the defendant."

The plaintiffs objected, and saved exceptions to instruction No. 4, and to so much of No. 2 as authorized the jury to deduct expenses of the sale from the value of the goods.

There was a verdict and judgment for defendants. Plaintiffs moved for a new trial, and, the same being overruled, appealed.

*N. W. Norton, C. F. Greenlee, J. N. Cypert* and *J. W. Phillips*, for appellants.

The goods of plaintiffs were turned into cash against their consent, and they can not be held liable for the cost of so doing. 45 Ark. 112; 39 Ark. 70. No process was ever issued upon the bill for a receiver, and hence no such cause was before the court. 62 Ark. 401. An action pending in equity involving the title to the property was no bar to a recovery in conversion. 52 Ark. 416. Plaintiffs were not required to be satisfied with the amount for which the goods were sold. 45 Ark. 112; 62 Ark. 135; 39 Am. Dec. 509.

*J. C. Hawthorne* and *Grant Greene, Jr.*, for appellees.

The expense of the sale was a necessary one, and appellants should bear it. 91 Mass. 62; 4 Paige, 24; 2 Johns. Ch. 582; 24 N. Y. 505; 1 Suth. Dam. 239; 3 *id.* 527, 536; 106 Mass. 331; 35 Mass. 278; 31 Mass. 356. Appellant's attorney waived service of notice of application for receiver, and hence there was no occassion for summons. 18 S. E. 268; 37 Pac. 1052; 9 L. R. A. 845 and note. The judgment appointing the the receiver can not be collaterally attacked. 62 N. W. 1050; 38 Pac. 854. Appellants were not prejudiced by evidence tending to show that goods were worth less than the invoice price. 44 N. W. 327; 91 Mass. 62.

RIDDICK, J., (after stating the facts.) This was an action upon an indemnifying bond to recover damages for the unlawful seizure and conversion of goods. It is admitted that the

defendants, in an action against one Goldman, caused the goods of plaintiffs to be seized and sold, but the defense is that plaintiffs have received the full value of such goods, less the costs of selling the same, and that this is all to which they are entitled. But we feel very confident that this contention can not be sustained. The goods of plaintiffs were wrongfully seized and sold, and they are entitled to recover their value at the time of the seizure, with 6 per cent. interest from that date, and defendants cannot diminish this sum by an allowance for costs of such unlawful sale.

The fact that the goods were sold by a receiver does not affect the question, for this receiver was not appointed in any action against plaintiffs. There is nothing in the record to show that plaintiffs assented to the appointment of such receiver, and we think that their rights are in no respect affected by such receivership. At the time this receiver was appointed, there was no action pending, except the action of attachment against Goldman, and the sale of the receiver was in effect only a sale of attached property under the order of the court where the attachment was pending. So far as Goldman was concerned, such sale operated to pass the title, but it in no way affected the rights of plaintiffs to recover the full value of their property thus sold. Plaintiffs had an interest in the goods attached, to the extent of the mortgage debt, for which they held the same, and it is admitted that this debt was for an amount greater than the value of the goods. They were practically owners of the goods, and in the case of an unlawful conversion they can recover the value of the goods converted. Although the mortgage provides for a sale of the goods, still one who unlawfully seizes and sells such goods will not be allowed to deduct from the value of the goods his expenses in selling them. The value of the goods was that sum of money for which they could be exchanged or sold in bulk; in other words, the net sum that could be realized by a sale. It represents the measure of the owner's injury occasioned by an unlawfully conversion of the same, and he is not fully compensated for such an injury if the wrongdoer is allowed to deduct from this sum his clerk hire and other costs of converting the goods into money.

We do not mean to say that plaintiffs can recover the re-

tail value of these goods, or the price for which they were sold at retail.    If they were seeking to recover that value, there would be more force in the contention that defendants, when acting in good faith, should be allowed necessary expenses of making the sale.    But plaintiffs are only asking the actual value of their goods in the condition and at the time they were seized.

It is conceded that defendants were acting in good faith, and. it may be that the gross sums they realized for these goods by selling at retail were greater in amount than the value of such goods at the time they were seized under the attachments. If the sums thus realized exceeded the value of the goods in bulk to an extent sufficient to cover the costs of selling at retail, it necessarily follows, under the rule of damages contended for by plaintiffs, that defendants will retain such costs; for plaintiffs are only seeking to recover the value of the goods in bulk at the time of the unlawful seizure.    On the other hand, if the price for which the goods were sold at retail is not more than their actual value in bulk at the time they were seized, the costs of this retail experiment should fall on defendants, who instituted it, and not on the innocent owners of the property.    It would certainly be a strange rule to allow one to unlawfully seize a stock of goods owned by another, hire clerks, and incur costs to dispose of the same at retail, and then, when he is sued, to answer, "I have paid you the value of your goods in bulk, less expenses incurred in retailing them, and this is all you can recover."    Such a rule, by enabling the wrong-doer to make a profit, would encourage violations of the rights of property, and requires only to be stated to show its unsoundness.    We therefore conclude that the circuit judge erred in instructing the jury to find for defendant, if plaintiff had already been paid the value of the goods in bulk, less the necessary expenses for selling the same.

In addition to the error noticed above, plaintiffs contend that the court erred in admitting improper evidence, but, if this be true, such error was cured by instruction No. 3 given at the request of plaintiffs.

It was competent to show the price that the goods in ques-

tion brought at the sale by the receiver, or what similar goods were sold at auction, as evidence bearing on the question of the actual or market value of the goods at the time and place of conversion.    The plaintiffs were not bound by the price at which receiver sold the goods, but, as the price obtained at such sales tends to show the value of the goods, it was proper to allow the jury to consider it in connection with other evidence bearing on the value.    26 Am. & Eng. Enc. Law, 826.

The only prejudicial error that we find has been noticed above, and extends only to the cost incurred by receiver in selling goods, which the evidence shows amounts to $342.90.    Appellees may, if they wish, consent that a judgment be entered against them here for said sum and the costs of the action; otherwise the judgment will be reversed, and a new trial granted.